[No. 10156. Department Two. September 12, 1912.]

CHARLES STEWART, *Respondent*, v. J. C. BOWEN, *Appellant*.[1]

MASTER AND SERVANT — INJURY TO SERVANT — SAFE PLACE — UNGUARDED MACHINERY—EVIDENCE—SUFFICIENCY. In an action for injuries sustained by a night watchman in a mill, who was injured while reaching under an edger to clear out the sawdust, there was sufficient evidence of defendant's negligence, where it appears that the mill was insufficiently lighted, that the saws of the edger were left running when the machine was not in use, contrary to custom, and no warning thereof given to the plaintiff, who could not see that they were running or hear them, and that the saws were without guards underneath the table when they might have been easily and effectively guarded.

SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE — SUFFICIENCY. In such case, the employee was not guilty of contributory negligence, as a matter of law, in not procuring a lantern before attempting to clear out the sawdust, or in using his hand instead of a scraper or shovel, where he did not know that the edger was in operation, the only light available was in use in another part of the mill, and the sawdust was so closely packed that he could not use the scraper with effect.

NEW TRIAL — CUMULATIVE EVIDENCE — DILIGENCE. A new trial should not be granted for newly discovered evidence that was mere-

[1]Reported in 126 Pac. 414.

ly cumulative or impeaching and no excuse was offered for not producing the witnesses at the first trial.

Appeal from a judgment of the superior court for Stevens county, Carey, J., entered January 26, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a night watchman in a sawmill. Affirmed.

*Martin & Wilson*, for appellant.

*Jesseph & Grinstead*, for respondent.

ELLIS, J.—The plaintiff, a man about 76 years of age, brought this action to recover damages for the loss of his right forearm, which injury he charges was caused by the defendant's negligence. There was evidence tending to establish, and from which the jury might have found, the following facts: The plaintiff began work as a night watchman in the defendant's sawmill on the evening of April 20, 1909. The injury occurred between 7 and 8 o'clock on the evening of May 4, 1909. He had never worked in a sawmill or around machinery prior to this employment, and had never been in this mill while the machinery was in operation before the evening when the injury happened, this being the first time that any of the machinery had been in operation at night while he was there. In addition to watching the mill at night, it was his duty to remove the sawdust, bark and other rubbish left about the saws and machinery from the day's operation, and to keep up steam in the boiler over night. The mill consisted of a large circular saw (called in the record the "big saw"), a planer, and an edger. These were all on the same floor and were all operated by the same engine. The edger and the planer were about nine feet apart. When the planer alone was in use, the big saw was usually put out of operation by throwing a clutch, and the edger was usually disconnected by unlacing the belt which propelled it. The edger consisted of three saws, each about 16 or 18 inches in

diameter, operating through a table about 3 feet high which stood upon legs. These saws projected above the table about 4 inches. Above the table they were guarded by a hood, but below the table they were wholly unguarded. There was no sawdust carrier or conveyor in connection with the edger. The sawdust and debris which collected under and about this machine had to be shoveled up and placed upon the conveyor of the big saw, which carried it out when that saw was put into operation in the morning. On the evening in question, the planer was the only part of the mill in use. The big saw was thrown out of operation by the clutch as usual, but the belt which propelled the edger was not unlaced, so that the edger saws, though not in use, were then in motion. The only light about the mill was a single lantern then in use in the engine room, which was the only part of the mill of which the sides were closed. There is little dispute as to these things.

The plaintiff testified, in effect, that he knew nothing about the machinery, had never seen it in operation, did not notice the belt, and did not know that the edger was operated by means of the belt, and supposed the edger was not running as it was not in use; that he could not hear it running because of the noise made by the planer, and could not see on account of the darkness. No one had warned him that the edger had not been disconnected, or that it was running, or of any danger in connection therewith. The plaintiff, after cleaning up about the log carriage and carriage track, went to the edger, reached under it with his hand in the darkness to loosen up and remove the sawdust, bark, and other rubbish, when his arm came in contact with one of the edger saws and was severed, necessitating two amputations. He was supplied with a rake or scraper, a broom and a shovel, but he testified that the rubbish was so closely packed beneath the edger that he could not have removed it with the scraper. Much of his testimony was contradicted by the defendant, but since the credibility of the evidence was for the jury, we

cannot disturb the judgment on the ground of insufficiency of evidence if these facts are sufficient to sustain the verdict.

The plaintiff charged as negligence the failure of the defendant to warn him of the danger, the failure to furnish sufficient light, and failure to sufficiently guard the edger saws. A demurrer to the complaint was overruled. The defendant answered, denying negligence, and affirmatively pleading contributory negligence and assumption of risk. At appropriate times, motions for nonsuit and a directed verdict were interposed by the defendant and overruled by the court. The jury returned a verdict for $1,250. The defendant's motion for a new trial was overruled and judgment was entered upon the verdict. The defendant has appealed.

In presenting his case the appellant has confined himself to the contentions: (1) that there was not sufficient evidence to establish the negligence charged; (2) that the evidence shows that the respondent was guilty of contributory negligence; (3) that in any event a new trial should have been granted.

The evidence was uncontradicted that the accident happened between 7 and 8 o'clock in the evening; and while the complete darkness of night had not set in, it was dusk. The head sawyer testified that it was so dark that he, looking from the engine room, could not distinguish the men at the planer, and that he told the appellant there was not sufficient light to work by. There was but one light, a single lantern available. There was some evidence that this lantern was intended for the use of the night watchman, but there was also evidence that it was intended for the use of any of the employees about the mill who might need it. It was in use in the engine room at the time. That room, being enclosed, would have been in darkness so that the engine could hardly have been operated but for this light. That there was insufficient light seems too plain for controversy.

The appellant was also negligent in failing to warn the respondent that the edger had not been disconnected. There

was evidence from which the jury were justified in finding that the respondent did not know that the edger was in motion. There was some evidence that the vibration ought to have warned him, but there was also evidence that the operation of the planer caused a noise and vibration sufficient to account for his not noting the movement of the edger. It is urged that he ought to have seen that the belt was in motion, but his testimony that he did not know how the edger was operated, nor the relation between the belt and the edger was uncontradicted. The appellant having elected to operate the planer, without, as was usual, disconnecting the edger, should have warned the respondent of that fact. This was especially true in view of the fact that the edger saws underneath the table were unguarded. There was evidence that these saws could have been easily and effectively guarded by two semi-circular boards without in any way interfering with the operation of the saws, and that in other mills such guards were used. There was evidence to sustain every charge of negligence. Its weight was for the jury.

The claim that the respondent was guilty of contributory negligence was based upon the fact that he did not procure the lantern before attempting to remove the debris from beneath the edger, and upon the further fact that he used his hand instead of the scraper or shovel. There would be much force in this claim if he had known that the edger was in operation. The appellant testified that he himself had used the edger shortly before the accident, and that the respondent must have seen him, but the respondent and the head sawyer, who was there at the time, both testified that the edger was not in use at any time that evening. The appellant and another witness testified that the respondent afterwards admitted that he knew the edger was in operation but "just forgot" and put his hand under the table. The respondent positively denied ever having made any such admission. It was for the jury to say what evidence it would believe. If the edger had not been running, as the respondent said he

supposed it was not, there would have been no danger in attempting to remove the sawdust in the darkness or with the hands. Moreover, the only light available was in the engine room, where it was obviously required in order to any operation of the planer. There was no evidence that the respondent could have secured the lantern had he called for it. He also testified that the sawdust and bark were so closely packed beneath the edger that he could not use the scraper with effect. Whether he acted as a reasonably prudent man possessed of the same knowledge would have acted under the same circumstances was a question for the jury. We cannot say that, as a matter of law, he was guilty of contributory negligence.

The motion for a new trial was based upon certain affidavits stating what the affiants respectively would testify to in case a new trial was granted. These affidavits show that the proposed new evidence would be merely cumulative or impeaching. Moreover, no sufficient excuse was offered for not producing these witnesses at the trial. There was no abuse of discretion in refusing a new trial.

The evidence was submitted to the jury upon instructions of which no complaint is made. Every principle of law involved being elementary, we have deemed it unnecessary to cite authorities. The judgment is affirmed.

MOUNT, CROW, FULLERTON, and CHADWICK, JJ., concur.